# EXHIBIT A

## IN THE CHANCERY COURT OF MADISON COUNTY, MISSISSIPPI

**BOTTLE TREE BEVERAGE COMPANY, LLC**                           **PLAINTIFF**

**V.**                                              CAUSE NO. _2025-316_

**WILLIAM CASE PACK**                                           **DEFENDANT**

### COMPLAINT

**COMES NOW**, Bottle Tree Beverage Company, LLC, by and through counsel and brings this Complaint for damages against the defendant as follows:

### PARTIES

1.     Plaintiff, Bottle Tree Beverage Company, LLC, is a Mississippi limited liability company licensed to do business and doing business in Mississippi with a principal office address of 422 South Farish Street, Jackson, Mississippi 39201.

2.     Defendant, William Case Pack, is an adult resident citizen of Alabama with a mailing address of 521 59th Place South, Birmingham, Alabama 35212.  Defendant may be served with process at that address or as otherwise permitted by law.

### JURISDICTION AND VENUE

3.     The parties specifically contracted and agreed to the appropriate state court (either chancery or circuit) located in Madison County, Mississippi for the enforcement of injunctive relief. In addition, one or more of the acts and omissions complained of herein occurred in Madison County, Mississippi.

FILED
MADISON COUNTY
MAR 17 2025
RONNY LOTT, CHANCERY CLERK
BY: _____ D.C.

1

## FACTS

4.      Defendant, William Case Pack ("Pack"), was previously employed with Bottle Tree Beverage Company, LLC ("BTBC").

5.      Pack's employment was conditioned upon and pursuant to an *Employment Agreement* ("contract") executed between the parties with an Effective Date of May 2, 2022.

6.      A copy of the contract between the parties is attached hereto as Exhibit "1."

7.      Pack was hired as the Alabama market manager and worked in that capacity until he voluntarily left BTBC in May of 2024 stating his intention to start a new business that would not compete with BTBC.

8.      The contact contained non-solicitation and non-compete provisions. The non-compete restricted period was defined in Section 7(4) (Exhibit "1").

9.      The non-solicit restricted period is found in Section 7(5) (Exhibit "1").

10.     The non-solicitation obligations of Pack are outlined in Section 7(c) (i - v) (Exhibit "1").

11.     Section 9 of the contract provided for BTBC's entitlement to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief. See Exhibit "1" at Section 9.

12.     The plaintiff has learned that Pack has violated the non-compete and non-solicitation provisions of the contract and continues to violate same.

13.     Attached hereto as Exhibit "2" is a *Cease and Desist and Notice of Intent to Sue* letter provided to Pack. Pack has not responded to the cease and desist correspondence.

14.    Pack accepted employment with Suntory Global Spirits, Inc. ("Beam Suntory" or "Suntory") in 2024.

15.    Suntory is in direct competition with BTBC.

16.    Specifically, Pack works a sales position for Suntory in the Mississippi and Alabama sales territories. Pack utilizes the same brokerage customer, Southern Glazers Wine & Spirits, LLC ("SG"), as BTBC.

17.    In addition, Pack's direct customers through Suntory are the same direct customers as BTBC (e.g., Alabama Alcoholic Beverage Control and Mississippi Alcoholic Beverage Control).

18.    In addition to Pack's solicitation of customers in direct competition with BTBC, Pack has solicited, induced or attempted to solicit and induce employees of BTBC.

19.    The known employee solicitation violations by Pack, on behalf of Suntory, include Michael Fondren and Jen Simcox who is the Mississippi Director of Sales for BTBC.

20.    Michael Fondren, upon information and belief, has accepted a position with Suntory following direct communication and solicitation by Pack.

21.    In the beginning of January of 2025, Pack began communicating with Jen Simcox by phone, email and text message.

22.    By way of example only, one text message from Pack to Simcox on January 13, 2025 is reproduced as follows: "Hey, just wanted to let you know. If you do have ANY inclination or wanting this position with us, please go ahead and put your name in so it can process through the system."

23.    Upon information and belief, Pack intends to continue his sales and marketing position with Suntory and Suntory intends to continue to employ Pack in this capacity.

3

24.    Upon information and belief, Pack intends to continue soliciting employees of the
plaintiff in direct violation of the contract between the parties.

## CAUSE OF ACTION
## COMPLAINT FOR PRELIMINARY INJUNCTION

25.    The plaintiff can establish that there is a substantial likelihood that it will prevail on
the merits demonstrating that the defendant voluntarily executed the contract between the parties
being the employment agreement of May 2, 2022.  The plaintiff can establish that Pack has accepted
employment with a known competitor and is, in fact, marketing and selling competitive products to
customers of the plaintiff in direct violation of the contract.  Plaintiff can establish through direct
evidence and testimony of former employees that Pack has solicited them and attempted to induce
them to leave their employment with BTBC and accept employment with Suntory.  The solicitation
of former employees has been successful in at least one instance to date.

26.    Plaintiff is facing irreparable injury through the intentional violation of the contract.
The actual and threatened injury to the plaintiff outweighs any potential harm to Pack who remains
in knowing and intentional violation of the contract through his customer marketing and solicitation
efforts as well as his solicitation of former co-workers.

27.    Entry of preliminary/temporary injunction against Pack is appropriate and consistent
with the public interest for the enforcement of non-solicitation and non-competition provisions of
employment contracts that are reasonable.

28.    The terms and conditions of the non-solicitation and non-competition provisions of
the contract herein are reasonable and must be enforced for the protection of the plaintiff who would
not have offered employment to Pack but for the contractual promises not to compete or solicit and

4

for the protection of the public in general to rely upon enforcement of valid contract provisions between parties.

29.     Moreover, the defendant expressly acknowledged the right to specific relief of preliminary injunction and permanent injunctive relief as well as for expedited discovery to prevent or restrain any such breach including, specifically, the non-competition and non-solicitation provisions of the contract. The defendant specifically acknowledged that the plaintiff would be entitled to recover its costs incurred in connection with any action to enforce Sections 5, 6, 7 and 8 of the contract including, specifically, reasonable attorney fees and expenses.

30.     The defendant further acknowledged the appropriateness of the Chancery Court of Madison County, Mississippi for the enforcement of injunctive relief necessitated by breach of the contract.

31.     There is no legitimate dispute that Pack is in direct and intentional violation of the contract. There is no dispute that Pack's employer, Suntory, is aware of Pack's contractual obligations to BTBC but continues to employ Pack in a competitive capacity and/or, permit Pack to solicit former and current employees of BTBC. Accordingly, injunctive relief is necessary to prevent the ongoing and irreparable injury to BTBC through the loss of employees and loss of customers that has occurred, and will continue to occur but for the intervention of the Court. Any potential harm to Pack is vastly outweighed by the ongoing and predictable harm to the plaintiff as Pack is knowingly and intentionally violating the contractual obligations and Pack remains employable by any other employer and/or in any other capacity that does not violate his employment contract. The interest of the plaintiff, and the interest of the public in general, requires injunctive relief to stop the malicious and intentional breach of contract.

## SPECIFIC RELIEF REQUESTED BY WAY OF INJUNCTION

32.     Upon information and belief, Pack has been in violation of his contract since he accepted employment with Suntory. The relevant contract provisions provide for extension of any non-compete period for any period of time in which the defendant is in violation and any period during which litigation is pending relating to such breach. The contract provides for extension of the non-solicit restricted period for any period of time in which the employee is in violation of Section 7 and any period during which litigation is pending relating to such breach.

33.     Pack's violations have existed, and continue to exist, from the beginning of his employment with Suntory which is a direct competitor to BTBC.

34.     Accordingly, BTBC requests that the Court investigate this matter and thereafter enter its order granting preliminary and/or temporary injunction to enjoin the defendant from directly or indirectly, on defendant's own behalf or on behalf of Suntory:  (i) Call upon, solicit, divert, encourage or attempt to call upon, solicit, divert or encourage any Customer for purposes of marketing, selling or providing products or services to such Customer that are similar to or competitive with those offered by the Company; (ii) Induce, encourage or attempt to induce or encourage any Customer to reduce, limit or cancel its business with the Company; (iii) Induce, encourage or attempt to induce or encourage any Customer to purchase or accept products or services competitive with those offered by the Company from any person or entity (other than the Company) engaging in the Business; (iv) Otherwise interfere or engage in any conduct that would have the effect of interfering, in any manner, with the business relationship between the Company and any of the Company's Customers; or (v) Solicit, induce or attempt to solicit or induce any Company

Employee ot terminate his or her employment or engagement with the Company or to accept employment or engagement with any person or entity engaging in the Business within the Restricted Territory.

35.    Plaintiff asks that the injunction be granted for the period of time dating from the defendant's employment start date with Suntory and continuing for a period of twelve (12) months for the non-compete restricted period from and after the date the defendant stops violation of the contract.

36.    Plaintiff asks that the preliminary and/or temporary injunction continue for twenty-four (24) months from and after the date the defendant stops being in violation of the non-solicit restricted period.

37.    Plaintiff asks that the Court award all costs of court, all out-of-pocket or other costs and expenses and reasonable attorney fees and expenses associated with bringing this action as agreed by the parties and provided by the contract at Section 9 together with all other relief deemed appropriate by the Court.

RESPECTFULLY SUBMITTED,

BOTTLE TREE BEVERAGE COMPANY, LLC,
Plaintiff

By:    /s/ Steven H. Funderburg
Steven H. Funderburg (MSB#9959)

OF COUNSEL:

FUNDERBURG, SESSUMS &PETERSON, PLLC
Post Office Box 13960
Jackson, MS 39236-3960
Telephone:    601-355-5200
Facsimile:    601-355-5400
Email: sfunderburg@fsplawfirm.com

***ATTORNEYS FOR PLAINTIFF***

## EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement"), dated effective ___ May 2 ___, 2022 (the "Effective Date"), is made by and between **Bottle Tree Beverage Company, LLC**, a Mississippi limited liability company ("BTBC" or "Company") and __ William Pack ___ ("Employee").

### RECITALS:

A.    Company owns, has developed, and is in the process of developing proprietary distilled spirits and related formulations, including its flagship product Cathead Vodka™, for distribution and sale (collectively, the "Products"), along with related promotional and distributional services for the Company and other proprietors, including bonded warehouse brokerage services.

B.    Employee represents that he/she has sufficient industry and technological skills relating to the formulation and distillation of distilled spirits.

C.    Company desires to hire Employee on an at-will basis to serve as ___ Alabama Market Manger, subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants of the parties set forth herein, it is hereby agreed as follows:

### SECTION 1. APPOINTMENT

1.1.    Appointment of Employee.  As of the Effective Date, Company hereby employs Employee, on the terms and conditions set forth in this Agreement, as ___ Alabama Market Manager _____ (the "Position").  The foregoing designation of Position is for sake of convenience and internal organizational purposes only and shall not imply any rights, privileges or benefits unless expressly set forth herein.  Employee hereby accepts such employment, all subject to the conditions, limitations and provisions set forth in this Agreement.  Employee shall provide Services (defined below) solely as an employee of the Company, and shall devote substantially all of Employee's business time, attention and best efforts to the performance of Employee's duties hereunder.

1.2    Authority and Services.  In connection with the assigned Position, Employee shall be responsible for ___ Market Manager _____, as well as those duties or responsibilities established or authorized by the Managers of the Company from time to time in writing (the "Services"). The Company shall have the right to direct, control and supervise the duties, hours, location and work of the Employee.  Employee acknowledges that the Company has or will develop credentialing, benchmarks or other procedures to monitor the quality and productivity of the Services performed by Employee.

Exhibit "I"

1.3.    <u>Reservation of Rights</u>. Company reserves the right to hire additional personnel to assist in any portion or component of the Position or the Services.

1.4.    <u>Product Line and Position Changes</u>. Company reserves the right from time to time to limit, expand or otherwise change its Product lines, re-assign the Position, assign Employee to new or different positions and/or modify the Services required of Employee.

1.5.    <u>No Conflict of Interest</u>.  Employee represents, warrants and covenants to Company that (i) Employee has not entered into any written agreement with any other party in connection with the sale of goods or services that are similar, in whole or in part, to Company Products and Services; (ii) Employee does not have any obligation to any other party which is inconsistent with Employee's obligations under this Agreement or that will interfere with Employee's performance of the Services; (iii) Employee shall not, in the performance of this Agreement, breach any obligations that Employee may have to others, including without limitation any obligations under non-compete or confidentiality agreements; and (iv) Employee shall comply with any confidentiality obligations regarding any trade secrets of any other companies or third parties to which Employee is obligated.

1.6    <u>Employee Service Duties</u>. Employee agrees to provide the Services in a competent and professional manner and as otherwise reasonably requested by the Company from time to time.

## SECTION 2. TERM; TERMINATION

2.1.    <u>Employment</u>.  Employee's employment pursuant to this Agreement shall commence on the Effective Date and shall continue thereafter until terminated by either party in accordance with this Section 2.  Neither this Agreement nor the acceptance of the Position and/or the performance of Services hereunder shall be deemed or construed to provide Employee with any right to continued employment; the right to employment for any specific contractual period or duration; or the right to any continuation of salary, severance or benefits post termination, except to the extent required by applicable law.

2.2.    <u>Termination without Cause</u>. This Agreement may be terminated by either party, with or without cause, upon giving the other party not less than thirty (30) days prior written notice of termination.

2.3.    <u>Immediate Termination</u>. This Agreement may be terminated by Company with immediate effect and without prior notice in the event of any of the following:

2.3.1.    <u>Breach</u>. Employee breaches the terms of this Agreement or any other Agreement between Employee and the Company.

2.3.2.    <u>Failure to perform</u>.  Employee fails, disregards or refuses to perform his/her duties as an employee of the Company.

2.3.3    <u>Misconduct</u>.  Employee engages in misconduct with respect to his/her duties or any other obligations owed to the Company.

2.3.4. <u>Death or disability</u>. The death of Employee or Employee's inability to perform the essential functions of his/her position by reason of illness, physical or mental disability or other incapacity, with or without a reasonable accommodation for more than ninety (90) days (which need not be consecutive) within any twelve (12) month period; provided, however, that nothing herein shall give the Company the right to terminate Employee prior to discharging its obligations to Employee, if any, under the Family and Medical Leave Act, the Americans with Disabilities Act, or any other applicable law.

2.4. <u>Rights Upon Termination</u>. Upon the termination of this Agreement for any reason whatsoever, Employee shall have no further right to continue in the Position or to perform the Services. Any salary or Commissions earned prior to the termination date will be paid to the Employee in accordance with applicable law and no later than thirty (30) days following the date of termination. Except as otherwise provided in this Agreement, no other amounts shall be due or owing to Employee upon termination of employment.

## SECTION 3. PRODUCT INQUIRIES

3.1. <u>Inquiries</u>. Subject in all cases to the confidentiality obligations specified elsewhere herein, Employee shall promptly transmit any inquiries relating to the Products or the Services to Company in the manner prescribed by Company, including without limitation, governmental or regulatory inquiries concerning the Company's methods, processes and practices.

3.2. <u>Reports</u>. Employee shall submit periodic production reports, journals or like records as may be reasonably requested by Company. Employee shall also participate as requested by Company on weekly (or other intervals as requested by Company) production meetings with Company management.

3.3. <u>Product Information</u>. Subject in all cases to the confidentiality requirements of this Agreement, Company shall make available to Employee goods, materials, and resources that the Company determines are reasonably necessary to enable Employee to perform the Services. All such Product information in the possession or control of Employee shall be returned to Company by Employee upon the termination of the Agreement or upon the request of the Company.

3.4. <u>Acceptance or Rejection</u>. Company has the right to accept or reject any Products or formulations, methods or Work Product (hereafter defined) that may be developed, in whole or in part, by Employee without prejudice to the Company's proprietary rights in and to such Work Product.

3.5. <u>Training</u>. Employee shall participate in training on Company's programs, software and systems as reasonably requested by Company.

## SECTION 4. PAYMENT

*W.P*

4.1. _Compensation and Benefits_. In consideration for the Services rendered hereunder, Employee shall be entitled to the compensation and other benefits as set forth on **Exhibit A**.

4.2. _Expenses_. From time to time, Employee may incur ordinary, necessary and reasonable expenses from the promotion of the Company's business, or in connection with rendering Services for the Company, including expenses for items of a business promotional nature, including travels, meals and lodging. Subject to the limitations set forth in **Exhibit A**, the foregoing expenses may be reimbursed to the Employee by the Company pursuant to the Company's policies concerning expense reimbursement policies as from time-to-time in effect.

## SECTION 5. COVENANTS OF EMPLOYEE

Employee covenants to Company that at all times during the term of this Agreement:

5.1 _Best Efforts_. Employee shall use his/her best efforts to develop and promote the Company's Products and to perform the Services, with highest ethical standards, and to develop, maintain and regularly enhance distillation and production methods within the Company.

5.2 _Use of Marks_. Except as set forth on approved Products or other materials provided to Employee by Company, Employee shall not use Company's name, trademarks, service marks or logos under any circumstances, unless Employee obtains prior written approval in each instance from Company. Nothing contained in this Agreement is intended to give Employee any license or right to use any of the foregoing except in connection with the performance of Services hereunder.

5.3 _Compliance with Laws_. Employee shall comply in all respects with all applicable federal, state, and local laws.

5.4 _Product Claims_. Employee shall not make any false or misleading statements or representations to customers or potential customers regarding the Products or otherwise, or any statements or representations which are in any way contrary to or inconsistent with the Company's approved promotional materials and literature. Furthermore, Employee shall not make any express or implied warranties to customers, potential customers or any other person or entity regarding the Products or Services which are not included in Company's then current printed materials without Company's prior written consent in each instance.

5.5 _Modification of Products or Packaging_. Without Company's prior written consent, Employee shall not modify or cause to be modified any of the Company Products. Employee shall not alter, in any way, the original packages of any Company Products.

## SECTION 6. CONFIDENTIAL INFORMATION

6.1. Employee acknowledges that the Company will give Employee access to



certain highly-sensitive, confidential and proprietary information belonging to the Company or third parties who may have furnished such information under obligations of confidentiality, relating to and used in the Company's business (collectively, "Proprietary Information"). Employee acknowledges that, unless otherwise available to the public, Proprietary Information includes, but is not limited to, the following categories of Company related confidential or proprietary information and material, whether in electronic, print or other form, including all copies, notes or other reproductions or replicas thereof: financial statements and information; budgets, forecasts and projections; business and strategic plans; marketing, sales and distribution strategies; the proprietary aspects of the Products; distillation methods; formulations under consideration; blends and recipes; research and development projects; records relating to any intellectual property developed by, owned by, controlled or maintained by the Company; information related to the Company's inventions, research, products, designs, methods, formulae, techniques, systems and processes; customer lists; prospective customer lists; non-public information relating to the Company's customers, prospective customers, suppliers, distributors or investors; the specific terms of the Company's agreements or arrangements, whether oral or written, with any customer, prospective customer, supplier, vendor or contractor with which the Company may be associated from time to time; and any and all information relating to the operation of the Company's business which the Company may from time to time designate as confidential or proprietary or that Employee reasonably knows should be, or has been, treated by the Company as confidential or proprietary.

6.2.    Any trade secrets of the Company will be entitled to all of the protections and benefits under applicable trade secrets law. If any information that the Company deems to be a trade secret is found by a court of competent jurisdiction not to be a trade secret, such information will, nevertheless, be considered Proprietary Information for purposes of this Agreement.

6.3    Proprietary Information does not include any information that: (i) at the time of disclosure is generally known to, or readily ascertainable by, the public; (ii) becomes known to the public through no fault of Employee or other violation of this Agreement; or (iii) is disclosed to Employee by a third party under no obligation to maintain the confidentiality of the information.

6.4    Employee acknowledges that the Proprietary Information is owned or licensed by the Company; is unique, valuable, proprietary and confidential; and derives independent actual or potential commercial value from not being generally known or available to the public. Employee hereby relinquishes, and agrees that he/she will not at any time claim, any right, title or interest of any kind in or to any Proprietary Information.

6.5    During and after employment with the Company, Employee shall at all times keep and maintain the confidentiality of all Proprietary Information, and shall not use, disclose or reproduce such Proprietary Information except in the course of performing duties assigned by the Company or as authorized in writing by the Company. During and after employment with the Company, Employee will not use and will not permit the use of the Proprietary Information in any way that would be detrimental to Company. Employee shall not physically or electronically remove or make copies of any Proprietary Information

(defined below) owned by Company, except as required by Employee to properly fulfill Employee's responsibilities under this Agreement. Employee shall surrender all Proprietary Information and any copies to Company within five (5) business days of a request by Company or upon termination of this Agreement, and shall not retain any copies or memoranda of that information in any form, and shall not communicate the Proprietary Information to others.

6.6    The restriction in Section 6.5 above will not apply to any information that Employee is required to disclose by law, provided that Employee (i) notifies the Company of the existence and terms of such obligation, (ii) gives the Company a reasonable opportunity to seek a protective or similar order to prevent or limit such disclosure, and (iii) only discloses that information actually required to be disclosed. Pursuant to the Federal Defend Trade Secrets Act of 2016, an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (a) is made (i) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to his or her attorney and use the trade secret information in the court proceeding, if the individual (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

## SECTION 7. NON-SOLICITATION

7.1.    Definitions.

(a)    As used in this Agreement, the following terms have the meanings given to such terms below.

(i)    "Business" means (A) the development, production, distillation, marketing and sale of proprietary distilled spirits and related formulations; (B) the development, production, distillation, marketing and sale of proprietary distilled spirits and related formulations that compete with the proprietary distilled spirits and related formulations developed, produced, distilled, marketed and sold by the Company; (C) bonded warehouse brokerage services; and (D) any other business that the Company is actively engaged in at the time of (x) the conduct in question, if such conduct occurs prior to the Termination Date, or (y) the Termination Date, if the conduct in question occurs on or after the Termination Date, provided that this clause (D) will only apply if Employee is involved with such other business.

(ii)    "Customer" means (A) any person or entity who is or was a customer of the Company during the twelve (12) month period immediately prior to (x) the conduct in question, if such conduct occurs prior to the Termination Date, or (y) the Termination Date, if the conduct in question occurs on or after the Termination Date, and with whom Employee had dealings on behalf of the Company in the course of Employee's employment

with the Company during such period, or about whom Employee received Proprietary Information during such period; and (B) any prospective customer to whom, within the twelve (12) month period immediately prior to (x) the conduct in question, if such conduct occurs prior to the Termination Date, or (y) the Termination Date, if the conduct in question occurs on or after the Termination Date, the Company had submitted proposals to for products or services of which Employee has knowledge, whether or not such proposals have yet to be executed into contracts, provided that the Company has a legitimate expectation of doing business with such prospective customer, and provided further that Employee had material business contacts with such prospective customer on behalf of the Company during such period, whether such contact was initiated by the prospective customer or by Employee.

(iii)   "Company Employee" means (A) any person who is an employee of the Company during the twelve (12) month period immediately prior to (x) the conduct in question, if such conduct occurs prior to the Termination Date, or (y) the Termination Date, if the conduct in question occurs on or after the Termination Date; and (B) any person or entity who is or was an independent contractor of or consultant to the Company during the twelve (12) month period immediately prior to (x) the conduct in question, if such conduct occurs prior to the Termination Date, or (y) the Termination Date, if the conduct in question occurs on or after the Termination Date.

(iv)   "Non-Compete Restricted Period" means the period commencing on the Termination Date and ending twelve (12) months thereafter, provided, however, that this period will be tolled and will not run during any time Employee is in violation of this Section 7, it being the intent of the parties that the Restricted Period will be extended for any period of time in which Employee is in violation of this Section 7, and any period during which litigation is pending relating to such breach.

(v)   "Non-Solicit Restricted Period" means the period commencing on the Termination Date and ending twenty-four (24) months thereafter, provided, however, that this period will be tolled and will not run during any time Employee is in violation of this Section 7, it being the intent of the parties that the Restricted Period will be extended for any period of time in which Employee is in violation of this Section 7, and any period during which litigation is pending relating to such breach.

(vi)   "Restricted Territory" means the United States of America; or if that geographic territory is deemed by a court of competent jurisdiction to be overly broad, any state, province or similar geographic subdivision in which the Company does business as of the Termination Date, including without limitation any state in which the Company distributes its products as of the Termination Date; or if that geographic territory is deemed by a court of competent jurisdiction to be overly broad, any state, province or similar geographic subdivision in which or to which Employee directs material Services or sells or markets the Products on the Company's behalf at the time of or during the twelve (12) month period prior to the Termination Date; or if that geographic territory is deemed by a court of competent jurisdiction to be overly broad, the State of Mississippi.

(vii)   "Termination Date" means the date of termination of Employee's

employment with the Company, regardless of the cause or reason, and whether initiated by Employee or by the Company.

(b)    OMITTED.

(c)    Non-Solicitation.  During Employee's employment with the Company and during the Non-Solicit Restricted Period, Employee will not, directly or indirectly, on Employee's own behalf or on behalf of any other party:

(i)    Call upon, solicit, divert, encourage or attempt to call upon, solicit, divert or encourage any Customer for purposes of marketing, selling or providing products or services to such Customer that are similar to or competitive with those offered by the Company;

(ii)    Induce, encourage or attempt to induce or encourage any Customer to reduce, limit or cancel its business with the Company;

(iii)    Induce, encourage or attempt to induce or encourage any Customer to purchase or accept products or services competitive with those offered by the Company from any person or entity (other than the Company) engaging in the Business;

(iv)    Otherwise interfere or engage in any conduct that would have the effect of interfering, in any manner, with the business relationship between the Company and any of the Company's Customers; or

(v)    Solicit, induce, or attempt to solicit or induce any Company Employee to terminate his or her employment or engagement with the Company or to accept employment or engagement with any person or entity engaging in the Business within the Restricted Territory.

(d)    Reasonableness of Restrictions.  Employee acknowledges and agrees that (i) the restrictive covenants in this Agreement are essential elements of Employee's employment by the Company and are reasonable given Employee's access to the Company's Proprietary Information and the substantial knowledge and goodwill Employee will acquire with respect to the business of the Company as a result of his/her employment with the Company, and the unique and extraordinary services to be provided by Employee to the Company; (ii) the restrictive covenants contained in this Agreement are reasonable in time, territory and scope, and in all other respects; and (iii) enforcement of the restrictions contained herein will not deprive Employee of the ability to earn a reasonable living.

## SECTION 8:  INTELLECTUAL PROPERTY

8.1 During the term of this Agreement, Employee shall disclose immediately to Company all ideas, concepts, business plans and strategies that he/she makes, conceives, discovers or develops during the course of his provision of Services to Company, including but not limited to any inventions, modifications, discoveries, developments, improvements,

*W.P.*

processes, products or procedures (whether or not protectable upon application by copyright, patent trademark, trade secret or other proprietary rights) ("Work Product") that: (i) relate to the Company Business or any customer or supplier to Company or any of the products or services being developed, manufactured, sold or otherwise provided by Company or that may be used in relation therewith, including but not limited to the Company Products; or (ii) result from work performed by Employee for the Company; or (iii) result from the use of the premises or personal property (whether tangible or intangible) owned, leased or contracted for by Company. Employee agrees that any Work Product shall be the sole and exclusive property of Company and, if subject to copyright, shall be considered a "work made for hire" within the meaning of the Copyright Act of 1976, as amended (the "Act"). If and to the extent that any such Work Product is found as a matter of law not to be a "work made for hire" within the meaning of the Act, Employee will and hereby does expressly assign to Company all right, title and interest in and to the Work Product, and all copies thereof, and the copyright, patent, trademark, trade secret and all their proprietary rights in the Work Product, without further consideration, free from any claim, lien for balance due or rights of retention thereto on the part of Employee.

8.2    Employee agrees that upon disclosure of Work Product to Company, Employee will, during the term of this Agreement and at any time thereafter, at the request and cost of Company, execute all such documents and perform all such acts as Company or its duly authorized agents may reasonably require: (i) to apply for, obtain and vest in the name of Company alone (unless Company otherwise directs) letters patent, copyrights or other analogous protection in any country throughout the world, and when so obtained or vested to renew and restore the same; and (ii) to defend any opposition proceedings in respect of such applications and any opposition proceedings or petitions or applications for revocation of such letters patent, copyright or other analogous protection.

8.3    In the event that Company is unable, after reasonable effort, to secure Employee's signature on any letters patent, copyright or other analogous protection relating to Work Product, whether because of Employee's physical or mental incapacity or for any other reason whatsoever, Employee hereby irrevocably designates and appoints Company and its duly authorized officers and agents as his/her agent and attorney-in-fact, to act for and on his/her behalf to execute and file any such application or applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright and other analogous protection with the same legal force and effect as if personally executed by Employee.

8.4    To the extent that any preexisting rights of Employee are embodied in the Work Product and not otherwise assigned to Company pursuant to separate Assignment Agreement (if applicable, an "Assignment"), Employee hereby grants to the Company the irrevocable, perpetual, nonexclusive, worldwide, royalty-free right and license to (1) use, execute, reproduce, display, perform, distribute copies of, and prepare derivative works based upon such preexisting rights and any derivative works thereof and (2) authorize others to do any or all of the foregoing.  All pre-existing rights embodied or incorporated into the Work Product shall be deemed assigned pursuant to this Agreement, or separate Assignment (as applicable), unless specifically reserved by Employee in writing (in which

case the immediately preceding license shall apply). Employee represents and warrants that preexisting rights (if any) and any Work Product hereunder shall not, to the best of Employee's knowledge, infringe on the intellectual property rights of any third party.

8.5  Employee hereby represents and warrants that Employee has the full right and authority to perform Employee's obligations and to grant the rights and licenses herein granted, and that Employee has neither assigned nor otherwise entered into an agreement by which Employee purports to assign any right, title, or interest to any Work Product that would conflict with Employee's obligations under this Agreement. Employee covenants and agrees that Employee shall not enter into any such agreements.

## SECTION 9:  RIGHT TO SPECIFIC RELIEF.

Employee recognizes and acknowledges that the limitations set forth in **Sections 5, 6, 7 and 8** are properly required for the adequate protection of the business of Company, and that violation of any of the provisions of these Sections will cause irreparable injury for which money damages are neither adequate nor ascertainable. Accordingly, Employee agrees that, in the event of a breach or threatened breach by Employee of any of Employee's obligations under Sections 5, 6, 7, and 8 of this Agreement, the Company will be entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief, and expedited discovery for the purpose of seeking relief, in order to prevent or to restrain any such breach.  The Company shall be entitled to recover its costs incurred in connection with any action to enforce Sections 5, 6, 7, and 8 of this Agreement, including reasonable attorneys' fees and expenses.

## SECTION 10. MISCELLANEOUS PROVISIONS

10.1.  <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto, and to their respective heirs, representatives, successors and permitted assigns.  Employee may not assign any of his/her rights or delegate any of his/her duties under this Agreement.

10.2.  <u>Notice</u>. All notices and other communications required or permitted hereunder shall be in writing and shall be mailed by registered or certified mail, postage prepaid, sent by facsimile, or otherwise delivered by hand or by a nationally-recognized overnight courier, properly addressed to the party for whom intended at the address set forth below or at such other address or facsimile number as such party shall have furnished to the other by notice given in accordance with this provision. Each such notice or other communication shall for all purposes of this Agreement be treated as effective or having been given (a) in the case of personal delivery, when actually delivered, (b) if delivery is by telecopier, on the date of such delivery as evidence by the sender's facsimile machine-generated confirmation report, (c) in the case of a nationally-recognized overnight courier on the date of delivery (or refusal) as shown on the courier's receipt, and (d) in the case of mailing, on the date of receipt (or refusal) shown on the return receipt.

10.3.  <u>Waiver</u>. No waiver of any provision of this Agreement shall be valid unless

the same is in writing and signed by the party against whom such waiver is sought to be enforced. Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such terms, covenants or conditions, nor shall any waiver or relinquishment of any right or power granted hereunder at any particular time be deemed a waiver or relinquishment of such rights or power at any other time or times.

   10.4.   <u>Resolution of Disputes</u>. Except for the enforcement of injunctive relief which shall have the exclusive venue of the appropriate state court (either Chancery or Circuit) located in Madison County, Mississippi or the Federal District Courts located in Jackson, Mississippi, any dispute, claim, or controversy in connection with or arising under this Agreement, its construction, existence, interpretation, validity, or any breach hereof, which cannot be amicably settled between the parties, shall be finally and exclusively resolved by arbitration under the Rules of Arbitration of the American Arbitration Association then prevailing. The parties agree that the dispute shall be resolved using one arbitrator unless the parties agree to a greater number of arbitrators. The arbitrator shall apportion the costs of the arbitration equally but may award or order reimbursement of legal fees and expenses in the manner deemed fair and equitable by the arbitrator. The arbitration proceedings shall be held in Madison County, Mississippi, U.S.A. and shall be subject to the terms of this Agreement, the intentions of the parties as stated herein, international commercial practice, and the governing law of Mississippi. The award in arbitration shall be final and binding, and judgment upon award may be entered in any court having jurisdiction or application may be made for judicial acceptance of the award and an order of enforcement. If it becomes necessary for either party to enforce an arbitral award by legal action or additional arbitration or judicial methods, the party against whom the award is ultimately enforced shall pay all reasonable costs and attorney's fees incurred by the party in enforcing the award. THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OR CLASS TREATMENT OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH THEREOF, PROVIDED THAT NOTHING IN THIS AGREEMENT SHALL PRECLUDE A PARTY FROM SEEKING TO COMPEL ARBITRATION IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION.

   10.5.   <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties pertaining to their subject matter, and supersedes all prior contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all parties.

   10.6.   <u>Severability</u>. Each provision of this Agreement is severable from every other provision of this Agreement. Any provision of this Agreement that is determined by any court of competent jurisdiction to be invalid or unenforceable will not affect the validity or enforceability of any other provision. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

   10.7.   <u>Advice of Counsel</u>. Employee represents as follows:

Bottle Tree Beverage Company, LLC
Employment Agreement – Confidential.
Page 11 of 14

(a) Employee understands that this Agreement contains legally binding provisions;

(b) Employee has had the opportunity to consult with a lawyer; and

(c) Employee has either consulted with a lawyer or consciously decided not to consult a lawyer.

10.8.   Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. This Agreement and all other documents to be executed in connection herewith are hereby authorized to be executed and accepted by facsimile signatures and such facsimile signatures shall be considered valid and binding as original signatures and may be relied upon by the parties hereto.

10.9.   Variation of Pronouns.   All pronouns and any variations thereof shall be deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the person or entity may require.

10.10.   Construction. No provision of this Agreement, or of any documents delivered pursuant hereto, shall be construed against any party, or its counsel, merely because such party or counsel initially drafted such provision or document. This Agreement shall be deemed to have been jointly drafted by the parties hereto for contract construction purposes.

10.11.   Incorporation by Reference.   Every exhibit, schedule, and other appendix attached to this Agreement and referred to herein is hereby incorporated in this Agreement by reference.

10.12.   Further Assurances.   Each of the parties hereto shall execute any and all further or additional documents and take such further actions as the other party may reasonably request in order to give effect to the agreements contained herein.

10.13.   Survival. The following Sections and subsections of this Agreement shall survive its termination: 2.1, 2.4, 5, 6, 7, 8, 9 and 10, and such other provisions which, by their nature, would reasonably be expected or intended to survive termination of this Agreement.

10.14.   Independent Covenants. For purposes of enforcing this Agreement, all Sections of this Agreement shall be construed as covenants independent of one another and as obligations distinct from all other contracts and agreements between the parties hereto.

**[Execution Page Follows]**

*W.P.*

IN WITNESS WHEREOF, the foregoing Agreement is hereby executed as of the date first above written.

Bottle Tree Beverage Company, LLC

_(Signature)_

Austin Evans
_(Printed Name)_

Co-Founder
_(Title)_

**EMPLOYEE**
**William Pack**

Address: _164 LaKeview Drive_
_Cordele, GA  31015_
_W. Pack_
(Signature)

## Exhibit A
## Compensation Addendum

Employee shall receive compensation for services rendered as follows:

1. Monetary compensation and benefits.



- Territory:
    o Initial Territory
        ▪ State of Alabama minus the two coastal counties



WITNESS THE SIGNATURES of the parties hereto as of the date set forth above.

Company:

Bottle Tree Beverage Company, LLC
By: _____
Its: Co-Founder

Employee:
_____

W.P.



Steven H. Funderburg
Craig R. Sessums
G. Davis Peterson

**Funderburg, Sessums & Peterson, PLLC**
Attorneys at Law

901 North State Street (39202)
Post Office Box 13960
Jackson, Mississippi 39236
Telephone (601) 355-5200
Facsimile (601) 355-5400
sfunderburg@fsplawfirm.com

March 7, 2025

William Case Pack (casepack11@hotmail.com)

**RE:** ***Violation of Employment Agreement of May 2, 2022***
***Between Bottle Tree Beverage Company, LLC and***
***William Pack***

### CEASE AND DESIST AND NOTICE OF INTENT TO SUE

Mr. Pack:

This office has been retained to represent Bottle Tree Beverage Company, LLC d/b/a Cathead Distillery ("BTBC") secondary to your breach of the *Employment Agreement* of May 2, 2022. Specifically, you are in violation of the non-compete and non-solicitation provisions itemized and defined under Section 7 of your contract with BTBC.

We have copied your current employer on this correspondence as they have potential liability for tortious interference of contract given their actual knowledge of the existence of the employment contract and the non-complete/non-solicitation provisions therein.

Upon information and belief, you have actively recruited and solicited employees of BTBC including, but not limited to, Michael Fondren. Upon information and belief, you have also directly marketed and sold brands that are in direct competition to the BTBC portfolio while working for Suntory. You have worked in a sales position in both Mississippi and Alabama. You utilize the same brokerage customer and direct customers including, but not limited to, the Alabama ABC and Mississippi ABC.

Please be advised that the non-compete restricted period is tolled and does not run during any time you are in violation of Section 7 of the contract. In addition, the Non-Solicit Restricted Period of 24 months is likewise tolled and will not run during any time you are in violation of Section 7. Upon information and belief, you have been in violation of the non-compete and non-solicitation provisions of the contract throughout your entire tenure with Suntory. Accordingly, we contend that the 24 month Non-Solicit Restricted Period has been tolled and will continue to be tolled until such time as you cease and desist from all solicitation activities in violation of the *Employment Agreement*.

The purpose of this letter is to assert the foregoing and instruct you to cease and desist from all violations of the *Employment Agreement*, including but not limited to, your non-competition and non-solicitation obligations. If you will not do so, this letter provides our notice of intent to file suit for all equitable and legal relief available under Mississippi law. BTBC

*Exhibit "2"*

William Case Pack
March 7, 2025
Page Two

reserves all rights to pursue all remedies against you, and/or your employer, to recover damages secondary to violations of the *Employment Agreement*.

We ask that you confirm receipt of this communication. Thereafter, we ask that you respond on or before the end of business on March 10, 2025 confirming that you will cease and desist from all competition and solicitation activities in violation of your *Employment Agreement* and will engage in no further activities until the expiration of the restricted periods, as tolled by your violations. If we do not hear from you by the end of business on March 10, 2025, we will file suit to enjoin you from continuing to violate the *Employment Agreement* in the Chancery Court of Madison County, Mississippi and will initiate arbitration to recover all damages, including attorney fees and costs, for the violations.

At present, we do not believe that Suntory was initially aware of your non-competition and non-solicitation obligations under the contract with BTBC when you were hired. However, your employer is presently aware of both your contractual obligations and your violations of same. Any additional facilitation of your employment that includes competition and solicitation in violation of the agreement will potentially result in pursuit of equitable and legal remedies to protect BTBC.

We look forward to hearing from your or your counsel by the end of business March 10, 2025 confirming your intent to cease and desist from all violations and affirmation that you will comply with the terms of your *Employment Agreement* with BTBC moving forward.

<div style="margin-left: 40%;">

Sincerely yours,

FUNDERBURG, SESSUMS
· & PETERSON, PLLC

By: */s/Steven H. Funderburg*
Steven H. Funderburg

</div>

SHF:lh
cc: Phil Azar (phil.azar@beamsuntory.com)
  17640 State Highway 181
  Fairhope, Alabama 36532

  Suntory Global Spirits, Inc.
  11 Madison Avenue 12th Floor
  New York, NY 10010

  Richard Patrick (richard@catheaddistillery.com)

## IN THE CHANCERY COURT OF MADISON COUNTY, MISSISSIPPI

**BOTTLE TREE BEVERAGE COMPANY, LLC**                      **PLAINTIFF**

**V.**                                        CAUSE NO. 202𝟝-316

**WILLIAM CASE PACK**                                    **DEFENDANT**

### SUMMONS

TO:    William Case Pack
       521 59th Place South
       Birmingham, Alabama 35212.

### NOTICE TO DEFENDANT

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to Steven H. Funderburg, Esq., Funderburg, Sessums & Peterson, PLLC, the attorney for the Plaintiff, whose post office address is P. O. Box 13960, Jackson, MS 39236-3960. Your response must be mailed or delivered within (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this 17th day of March , 20 25 .

SEAL

**Ronny Lott** By: Kelsey Forbig

RONNIE LOTT, CHANCERY CLERK
MADISON COUNTY, MISSISSIPPI
Post Office Box 404
Canton, Mississippi 39046