**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

BOTTLE TREE BEVERAGE COMPANY, LLC                    PLAINTIFF

V.                                                                CASE NO. 3:25-cv-275-HTW-LGI

WILLIAM CASE PACK                                              DEFENDANT

**<u>MEMORANDUM BRIEF IN SUPPORT OF</u>**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**I.      Introduction**

This case involves Plaintiff Bottle Tree Beverage Company, LLC's ("BTBC") efforts to unlawfully deter fair and ordinary competition, including by seeking to enforce an entirely non-existent "non-competition" provision. For around two (2) years, Defendant William Case Pack ("Pack") worked for BTBC as a Market Manager exclusively within the State of Alabama. In April 2024, Pack informed BTBC he was leaving and joining Suntory Global Spirits, Inc. ("Suntory"). For the next 11 months, BTBC *knew* that Pack was working for Suntory—and yet it did nothing.

Despite not contacting Pack for almost a year, On March 7, 2025, suddenly eager to advance baseless claims and intimidate other employees who were actively seeking to leave BTBC's employment, BTBC demanded that Pack, within just three (3) days, effectively stop working for Suntory and lose his only source of income. If Pack did not yield to BTBC's unilateral demand, BTBC threatened that it would file suit. On March 17, 2025, Pack (through counsel) responded to BTBC's demand and explained, among other things, the unenforceable nature of his agreement and the impact of BTBC's inexplicable delay in seeking to enforce the same.

Notwithstanding Pack's good faith response, BTBC filed the underlying lawsuit that very day, alleging a single claim for breach of contract for which it seeks broad injunctive relief based on the putative restrictive covenants it waited nearly a year to pursue. Another 2.5 months later, on May 29, 2025, BTBC, for the first time, filed a Motion for Preliminary Injunction.

As set forth below, because nearly 13.5 months passed since BTBC learned that Pack had accepted employment with Suntory before it moved for injunctive relief, BTBC has waived enforcement and cannot show irreparable harm. BTBC also has unclean hands and frivolously seeks to enforce a non-compete clause that actually does not exist in the Agreement.

Moreover, the absence of a choice of law provision in the operative agreement means that the Court should apply Alabama law. Under Alabama law, BTBC's claim fails as a matter of law because (1) pre-employment restrictive covenant agreements are void under Alabama law, (2) the agreement lacks any non-competition provision, (3) the employee non-solicitation provision violates Alabama law, and (4) BTBC has also waived enforcement through its failure to enforce its restrictive covenants against other similarly situated former employees, including an employee actually based in Mississippi.

Accordingly, the Court should grant Pack's Motion for Summary Judgment and BTBC's claim with prejudice.[1]

---

[1] Rule 56 permits Pack to file a motion for summary judgment "at any time." Fed. R. Civ. P. 56(b). Although Pack recognizes this early nature of this type of motion is not common, no amount of discovery will change the fact that the underlying Agreement is void and unenforceable.

## II.     Factual Background

### A.     Pack's Employment History

In early April 2022, Pack accepted a job offer with BTBC. (*See* Declaration of William Russell "Case" Pack ("Pack Decl.") at ¶ 3).[2] Before Pack started working for BTBC, however, BTBC asked Pack to sign the Employment Agreement (the "Agreement"), at which point Pack was living and working in Colorado for Empire Distributors of Colorado. (*Id.* at ¶¶ 2-3). The Agreement purports to contain customer and employee non-solicitation covenants. (*See* Doc. 1-1 at 16, §§ 7(c)(i)-(iv) (the "Customer Non-Solicitation Provision"), 7(c)(v) (the "Employee Non-Solicitation Provision")), but conspicuously lacks any geographic non-compete provision.

By April 6, 2022, Pack signed and returned the Agreement by mail from Colorado to BTBC. (*See* Pack Decl. at ¶ 4). On April 13, 2022, Pack returned from Colorado to his residence in Georgia for a few weeks before moving to Birmingham, Alabama for the purpose of beginning working for BTBC. (*Id.* at ¶ 5). On April 27, 2022, Pack moved to Alabama; however, BTBC did not provide any financial assistance to Pack related to his move to Alabama. (*Id.* at ¶ 6). Ever since April 27, 2022, Pack has resided exclusively in Alabama. (*Id.* at ¶ 7).

On May 2, 2022, Pack started working for BTBC as the Alabama Market Manager. (*Id.* at ¶ 3; Doc. 1-1 at 9, § 1.1). Pursuant to the Agreement, Pack's territory for BTBC was the "State of Alabama minus the two coastal counties." (Doc. 1-1 at 22). Consistent with this language, Pack solely worked within his assigned territory for BTBC. (*See* Pack Decl. at ¶ 8). While employed by BTBC, Pack did not work in Mississippi, contact

---

[2] Attached to Pack's Motion as **Exhibit A**.

customers in Mississippi, or supervise any employees in Mississippi. (*Id*. at ¶ 9).

In April 2024, Pack informed BTBC he was ending his employment. (*Id*. at ¶ 10). Further, on April 26, 2024, Majure Markow, BTBC's Vice President of Sales, reached out to Pack about his job change and specifically asked Pack if he had "gone to work for Beam."[3] (*Id*.; Pack Decl. Ex. 1). Pack confirmed he had accepted employment with Suntory, to which Mr. Markow simply responded with, "Good Luck." (*Id*.). Pack has continued to reside and work in Alabama as Territory Manager for Suntory. (*Id*. at ¶ 11).

### B.    BTBC's Failure to Diligently Pursue Enforcement

On March 7, 2025, BTBC sent Pack a demand letter about his purported restrictive covenants under the Agreement. (*See* Doc. 1-1 at 23). Although Pack had notified BTBC that he was joining Suntory nearly 11 months earlier, BTBC never contacted Pack about his Agreement, much less claimed that he was in breach of any provision of his Agreement. (*See* Pack Decl. at ¶ 10). On March 17, 2025, Pack responded to BTBC, raising many of the same issues addressed in this Motion. (*See* Letter to BTBC's Counsel (Mar. 17, 2025)).[4] Nonetheless, on March 17, 2025, BTBC filed the underlying suit in the Chancery Court of Madison County, Mississippi. (*See* Doc. 1-1). At no point in state court did BTBC move for a preliminary injunction or temporary restraining order. (*Id*.), On April 17, 2025, Pack removed to this Court. (*See* Doc. 1).

BTBC's lack of diligence persisted following removal, as Plaintiff waited another 42 days after removal (73 days after filing its Complaint) before **finally** moving for a preliminary injunction. (Doc. 7). And, BTBC did this only after Pack's counsel reminded

---

[3] "Beam" is common shorthand for Suntory's former corporate name "Beam Suntory," which was rebranded in 2024. *See* Suntory Global Spirits, News Release (May 1, 2024), available at https://www.suntory.com/news/article/14590E.html (last visited June 12, 2025).
[4] Attached to Pack's Motion as **<u>Exhibit B</u>**.

BTBC's counsel that no such motion had ever been filed.[5]

### C. BTBC's Habitual Voluntary Waiver of Agreements

It is BTBC's routine business practice to not seek enforcement of its agreement with employees who leave to join purported competitors. Within the last two years, Pack is aware of the following individuals who left BTBC to join a competitive business against whom BTBC did not seek enforcement of its restrictive covenants: (1) Ian Miller, a manager based on South Carolina; (2) Bryan Windsor, a manager based on Tennessee; (3) Rob Boyland, a manager based on Florida; (4) Sarah Martin, a manager based on South Carolina; and (5) Michael Fondren, a manager based in Mississippi. (*See* Pack Decl. at ¶¶ 12-16).

In March 2025, like Pack, Mr. Fondren left BTBC to work for Suntory. Mr. Fondren worked for BTBC in Mississippi, and he continues working for Suntory in Mississippi. (*Id.*). Recall that Mr. Fondren is one of the two employees of whom gives BTBC most concern. (*See* Doc. 1-1 at ¶¶ 19-20). Days *after* BTBC filed this lawsuit against Pack, it fully released Fondren from his restrictive covenants:

On Thursday, March 20, 2025, 3:51 PM, Richard Patrick <richard@catheaddistillery.com> wrote:

Michael,

Please let this email suffice in that Bottle Tree Beverage Company is removing the prohibition on your previous employment agreement with Bottle Tree Beverage on our callable customer universe in Mississippi for your previous employment contract.

We wish you the best and thank you for the hard work over the last six years.

Best,

--
Richard Patrick   co-founder/managing member
Cathead Distillery | Bottle Tree Beverage Company
O: 601.667.3038 | M: 601.954.8207
www.catheaddistillery.com

*Family Owned & Operated Since 2010*

---

[5] Attached to Pack's Motion as **Exhibit C**.

(*See* Pack Decl., Ex. 2). Critically, Fondren actually holds the ***same*** Territory Manager position with Suntory in Mississippi that Pack occupies in Alabama. (*See* Declaration of Phillip Azar ("Azar Decl.") at ¶ 3).[6] On the one hand, BTBC alleges it is sustaining irreparable harm from Pack's "customer marketing and solicitation efforts as well as his solicitation of former co-workers," in Alabama and Mississippi (Doc. 1-1 at ¶¶ 14-20, 26),[7] even though he only resides and works in Alabama. (Pack Decl. at ¶¶ 8-9, 11). On the other hand, BTBC has taken the contradictory position and expressly authorized Mr. Fondren to solicit the same "callable customer universe in Mississippi." (*See* Pack Decl., Ex. 2).

## III.   Authority and Analysis

### A.   Legal Standard

The Court is more than familiar with the standard of review on summary judgment: Summary judgment is appropriate when the record "demonstrates 'there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 224 (5th Cir. 2020). After the movant informs the district court of the basis for its motion, the non-movant must put forth affirmative evidence stablishing a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). To survive summary judgment, a nonmoving party may not rest upon mere denials or allegations, but must set forth specific facts sufficient to raise a genuine issue for trial. *Id.* at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[6] Attached to Pack's Motion as **Exhibit D**.
[7] (*See also* Doc. 7 at 4 (claiming "every day [Pack] remains employed and working for [Suntory] to solicit, market and promote Suntory's products to the former customers of BTBC" causes irreparable harm to BTBC)).

Summary judgment is appropriate when a non-moving party cannot present evidence to meet an essential element of its claim. *Id*. at 322.

**B. The Court should decline to enforce the Agreement because BTBC's lack of urgency in pursuing its rights shows there is no irreparable harm.**

The lawsuit involves a single claim for injunctive relief in which BTBC alleges to have sustained irreparable harm through Pack's employment with Suntory. (Doc. 1-1 at ¶¶ 25-31). Irrespective of choice of law analysis, BTBC has waived its rights to pursue enforcement of the Agreement, and thus cannot show irreparable harm. "Waiver is the intentional relinquishment of a known right." *Edwards v. Allied Home Mortg. Capital Corp.*, 962 So.2d 194, 208 (Ala. 2007) (citation omitted).[8] "A party's intent to waive a right may be found from conduct that is inconsistent with the assertion of that right." *Id*.

Along similar lines, "[a] movant seeking preliminary injunction under Rule 65 must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *McRae v. ConnectDirect Online, Inc.*, No. 3:24-cv-786-DPJ-ASH, 2025 U.S. Dist. LEXIS 26082, at *12 (S.D. Miss. Feb. 13, 2025) (citation omitted).

Here, BTBC waived its right to pursue injunctive relief by waiting 11 months **after** learning about Pack's move to Suntory before seeking enforcement of the Agreement. (*See* Pack Decl. at ¶ 10; Doc. 1-1 at 23-24). District courts in the Fifth Circuit have routinely found that substantially shorter delays precluded injunctive relief. *See Gemstone Foods, LLC v. Pitts*, No. 3:23-cv-2968, 2024 U.S. Dist. LEXIS 62016, at *6 (S.D. Miss.

---

[8] *See also Am. Nat'l Prop. & Cas. Co. v. Estate of Farese*, 530 F. Supp. 3d 655, 669 (N.D. Miss. 2021) (same under Mississippi law).

Apr. 4, 2024) (holding a party's five-month delay in seeking an injunction meant it failed to establish irreparable harm); *see also LeBlanc v. Mis, Inc.*, No. 24-00209-KD-MU, 2024 U.S. Dist. LEXIS 214997, at *7 (S.D. Ala. Nov. 26, 2024) (same).

In *Gemstone Foods*, for example, the former employer filed suit in state court to enforce restrictive covenants against a former executive **three months** after his employment ended. 2024 U.S. Dist. LEXIS 62016, at *3. In state court, the former employer moved for a preliminary injunction. *Id*. The former employee timely removed to federal court and answered. *Id*. at *3-4 Five months after removal, the former employer moved for preliminary injunction. *Id*. at *4. The district court held that the former employer's delay, both during litigation and with respect to the duration of the restrictions, was inexplainable and meant it could not "carr[y] its burden of showing a substantial threat of irreparable harm." *Id*. at *4-6.

BTBC's decision to sit on its hands for **11 months**, despite knowing Pack joined Suntory, a perceived competitor, implicitly concedes no irreparable harm exists. *Id*. BTBC's delay in filing suit is almost four times as long as the employer in *Gemstone Foods*. Unlike *Gemstone Foods*, and making matters worse, BTBC never even moved for a preliminary inunction in state court. (*See generally* Doc. 1-1). Doubling-down on its lack of urgency, after Pack's removal, BTBC waited another 42 days before **finally** moving for a preliminary injunction in this Court, and did so only after counsel for Pack reminded Plaintiff's counsel that no such motion had ever been filed. (*See* Exhibit C). In total, **BTBC waited approximately 13.5 months** since learning Pack was going to work for a competitor before it moved for injunctive relief. This unexplainable delay demonstrates the lack of irreparable harm, *Gemstone Foods*, 2024 U.S. Dist. LEXIS

62016, at *3-4, and constitutes a voluntary relinquishment of its right to enforce the Agreement's restrictive covenants. *See Edwards*, 962 So.2d at 208; *Estate of Farese*, 530 F. Supp. 3d at 669.

Given that BTBC's only cause of action is one for injunctive relief – relief waived as a matter of law – Plaintiff's Complaint should be summarily dismissed.

### C. The Court should apply Alabama law.

When a courts sits in diversity jurisdiction, the forum state's choice of law rules determine which state's substantive law applies. *Hartford Underwriters Ins. Co. v. Found. Health Servs.*, 524 F.3d 588, 593 (5th Cir. 2008). Under Mississippi law, courts apply "the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws[9]." *Id.* (citation omitted).

The issue regarding enforceability of the Agreement is substantive and contractual in nature. *Id.* Because the Agreement does not contain a choice of law provision as it concerns judicial enforcement of the Agreement, (*see* Doc. 1-3 at 19, § 10.4),[10] Mississippi law requires application of Restatement § 188, in addition to general policy considerations of Restatement § 6, to determine which state "has the most significant relationship to the transaction and the parties." *See Kroeger v. Geico Gen. Ins. Co.*, No. 3:19-cv-00050-NBB-JMV, 2020 U.S. Dist. LEXIS 74385, at *11-13 (N.D. Miss. Apr. 28, 2020).

---

[9] Pack will subsequently refer to this as the "Restatement."

[10] The only provision relating to choice of law expressly limits it to arbitration proceedings. (*Id.* ("The arbitration proceedings shall . . . be subject to . . . the governing law of Mississippi.")).

The following are the contacts to consider: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (d) the location of the subject matter of the contact; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id*. (citing Restatement § 188).

First, Pack executed the contract in Colorado, (*see* Pack Decl. at ¶¶ 2-4), making the place of contracting Colorado. *See Primoris T&D Servs., LLC v. MasTec, Inc.*, No. 4:23-cv-0416-P, 2023 U.S. Dist. LEXIS 82563, at *6 (N.D. Tex. May 11, 2023) (explaining the place of execution "not merely the place where a boilerplate employment agreement was copied and pasted together" governs). This factor does not favor either Alabama or Mississippi law.

Second, no negotiations occurred while Pack was physically present in Mississippi; instead, as stated above, any negotiation (*e.g.,* reviewing and execution of the Agreement by Pack) occurred while Pack was working in Colorado. (*See* Pack Decl. at ¶¶ 2-4). Thus, this factor is neutral. *See Primoris*, 2023 U.S. Dist. LEXIS 82563, at *6-7.

Third, the place of performance was Alabama. Pack's job title while employed by BTBC was "Alabama Market Manager," he was assigned a geographical territory of only the "State of Alabama minus the two coastal counties," and he worked and lived in Alabama throughout his employment with BTBC. (*See* Pack Decl. at ¶¶ 3, 7-9; Doc. 1-1 at 9, § 1.1, 22). This factor decidedly tips in favor of Alabama. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 583 (5th Cir. 2015) (relying primarily on place of performance to determine Oklahoma law would apply in a Texas company's efforts to enforce noncompete agreements against Oklahoma-based former employees who primarily worked out of Oklahoma).

Fourth, the location of the subject matter of the contract is Alabama, which is the geographical area to which BTBC assigned Pack. (*See* Doc. 1-1 at 22). This factor also favors Alabama law.

Fifth, BTBC's domicile is Mississippi, (Doc. 1-1 at ¶ 1), and Pack's domicile, at the time of his performance under the Agreement (and at present), is Alabama. (*See* Pack Decl. at ¶¶ 3, 7-9). While this may appear neutral, the factor also requires consideration of the "place of business of the parties," which "impl[ies] a much broader connotation that could apply to satellite offices or branches that are at issue in a contract" than just a company's headquarters. *See Primoris*, 2023 U.S. Dist. LEXIS 82563, at *8. As stated above, Pack was specifically assigned to Alabama and performed all of his business on behalf BTBC in Alabama. (*See* Pack Decl. at ¶¶ 3, 7-9; Doc. 1-1 at 9, § 1.1, 22). Thus, this factor also favors Alabama.

Although this is not a "mathematical" test, *see Hartford Underwriters*, 524 F.3d at 595, "the greater contacts—both in number and quality—favor" Alabama. *See Cardoni*, 805 F.3d at 583. For example, in *Cardoni*, although one employee worked for a company based in Texas, handled some Texas customers, and managed an employee group based in Dallas, Texas, the court held Oklahoma had the most significant relationship. *Id*. This is because the employee lived in Oklahoma, negotiated his agreement in Oklahoma, but, "[m]ost significant[ly]," he performed most of his work in Oklahoma, had mostly non-Texan, including Oklahoman, customers, and the contract specified Tulsa, Oklahoma as the place of performance. *Id*.

Here, the facts more decisively point in favor of Alabama than those for Oklahoma in *Cardoni*. Whereas the employee in *Cardoni* had customer and internal leadership

responsibilities in Texas, here, Pack performed *all* of his work in Alabama, was responsible solely for customers in Alabama, and did not supervise any employees in Mississippi. (Pack Decl. at ¶¶ 8-9). Like *Cardoni*, Pack resided in Alabama and his contract specified Alabama as the place of performance. (*Id*. at ¶¶ 6-8; Doc. 1-1 at 22).

Moreover, the gravamen of BTBC's Complaint is the imposition of restrictive covenants against Pack, an Alabama resident, limiting his employment opportunities in Alabama; e.g., prohibiting his contact with customers based in Alabama. *See Cardoni*, 805 F.3d at 584-85 (finding Oklahoma had materially greater interest in potential enforcement of restrictive covenants based on the impact on Oklahoma's residents, a company operating in the state, a competitor in the state wanting to hire the employee, and the Oklahoma customers impacted).

Further, Alabama has declared that its restrictive covenant statute "expresses fundamental public policies of the State of Alabama" and "shall govern and shall be applied instead of any foreign laws that might otherwise be applicable in those instances when the application of those foreign laws would violate a fundamental public policy." *See* Ala. Code § 8-1-197. As explained below, enforcement of the Agreement's restrictive covenants would run contrary to both Alabama law and public policy. Accordingly, application of Restatement § 188 strongly favors application of Alabama law. *See Cardoni*, 805 F.3d at 583.

**D.     The Agreement's restrictive covenants are void under Alabama law.**

For years, Alabama law and public policy has strongly disfavored restraints on one's employment. *See Calhoun v. Brendle, Inc.*, 502 So.2d 689, 691 (Ala. 1986). As a result, under Alabama law, contracts restraining any person "from exercising a lawful

profession, trade, or business of any kind" are void, unless the contract falls under one of the narrowly enumerated statutory exceptions. *DeVos v. Cunningham Grp., LLC*, 297 So.3d 1176, 1183 (Ala. 2019) (quoting Ala. Code § 8-1-190).

It is also well settled that agreements containing restrictive covenants that are signed before one's employment begins are invalid. *See Dawson v. Ameritox, Ltd.*, 571 Fed. Appx. 875, 879-80 (11th Cir. 2014). Thus, an employer-employee relationship must exist ***at the time*** the agreement is executed. *See Pitney Bowes, Inc. v. Berney Office Solutions*, 823 So.2d 659, 662 (Ala. 2001). Importantly, "[t]he burden is upon the person or entity seeking to enforce a contract which restrain a lawful trade or business to show that it is not void." *Calhoun*, 502 So.2d at 693.

For example, in *Dawson*, an employee signed a restrictive covenant agreement four days before he commenced his employment. 571 Fed. Appx. at 876. Even though the employee verbally accepted employment, and started days later, the court held that the pre-employment signing rendered the agreement void under Alabama law. *Id*. at 880. Similarly, in *Pitney Bowes*, the court voided an agreement before the employer-employee relationship started and held "[t]he voidness . . . did not disappear when [plaintiff] employed [defendant] almost a month after the signing" and defendant "did not re-execute the agreement." *Id*.

Here, the Agreement states that Pack's employment commenced on May 2, 2022. (Doc. 1-1 at 9, § 1.1). However, Pack signed and returned the Agreement while living and working in Colorado in April 2022. (*See* Pack Decl. at ¶ 2-4). Weeks passed between Pack's signature and his start date for BTBC, during which time he returned to his residence in Georgia and prepared to move to Alabama. (*Id*. at ¶¶ 4-6). The Agreement

itself show that Pack signed it with his Georgia address. (Doc. 1-1 at 21). Pack did not commence employment with BTBC until May 2, 2022. (*Id*. at 9, § 1.1). As in *Pitney Bowes*, Pack's signature nearly a month **before** actually starting his employment with BTBC renders the Agreement void under Alabama law. *Pitney Bowes*, 823 So.2d at 662; *see also Dawson*, 571 Fed. Appx. at 880 (holding a signature even four days before one's employment started is not sufficient to preclude invalidation of an agreement). Also like *Pitney Bowes*, Pack's continued employment did not revive an already void Agreement. Therefore, the Court should dismiss BTBC's Complaint because the Agreement is void under Alabama law.

### E. The Agreement does not contain a non-compete provision.

Beginning with its demand letter and continuing with its Complaint, BTBC has inaccurately claimed that Pack is subject to a "non-compete" provision. (*See, e.g.,* Doc. 1-1 at ¶ 12 (claiming "Pack has violated the non-compete . . . provisions of the contract"); *see also id*. at ¶¶ 8, 27-28, 31-32, 35). However, no such "non-compete" provision exists in the Agreement.

Although there is a paragraph titled "Non-Compete Restricted Period," (*id*. at 15, § 7.1(iv)), there is no actual provision containing a covenant not to compete contained in the Agreement. Presumably, it would fall under Section 7(b), directly above the "Non-Solicitation" provision, where the Agreement reads: "<u>OMITTED</u>." (*Id*. at 16, § 7(b)) (emphasis in original). Therefore, contrary to BTBC's representations and claims, there is not a non-compete provision in the Agreement. Rather, the fully capitalized and underlined word—<u>OMITTED</u>—decisively shows that the parties did ***not*** intend for any

non-compete provision to exist. (*Id*.). If a non-compete provision does **not** exist, then, of course, it is impossible for Pack to ever breach a "non-compete" provision.

For these reasons, BTBC pre-litigation threats and continued pursuit of any claim based on a non-existent non-compete provision not only crosses the line of frivolous, but arguably constitutes an illegal effort to deter ordinary competition.[11] Accordingly, the Court should dismiss any claim based on the Agreement's non-existent "noncompete" provision.

### F.  The Employee Non-Solicitation provision is void under Alabama law.

The Alabama statute, which begins with the assumption any contract restraining one's employment is void, only permits a narrow employee nonsolicitation in the following instance: "A contract between . . . a person and a business limiting their ability to hire or employ the agent, servant, or employees of a party to the contrary where the agent, servant, or employee **holds a position uniquely essential to the management, organization, or service of the business**." Ala Code § 8-1-190(a)-(b)(1) (emphasis added). The term "uniquely essential" is used "to limit use of the exception to circumstances in which the employe in question holds a position which is not only important to the business, but in which the . . . employee's services would be very difficult to replicate." *See* Ala Code § 8-1-190, cmt.

For example, in *Cajun Steamer Ventures v. Thompson*, an employee nonsolicitation stated a former employee could not "recruit, solicit or induce any person

---

[11] To this end, BTBC's unclean hands should bar its recovery in this case entirely. *See, e.g., Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993) (explaining unclean hands applies if "plaintiff's wrongdoing is directly related to [its] claim" and it injuries defendant through its conduct). Here, BTBC's continued pursuit of a claim based on a non-compete that does not exist is directly related to the claims in this lawsuit and injured Pack by forcing him to defend against a frivolous claim.

or entity, who was an employee, agent, independent contractor or representative of the Company . . . to cease their employment, engagement or other relationship with the Company or solicit the services of such person." 402 F. Supp.3d 1328, 1333 (N.D. Ala. 2019). The court held that the provision's plain language failed to comply with the "uniquely essential" statutory language, and thus was too broad. *Id*. at 1340-41. Further, the court refused to partially void the restraint because it was unreasonable in substance. *Id*. at 1341. The court explained that plaintiff's request was incongruent with the statute's comment, which stated it was intended "to cause parties, especially the drafting party, to draft reasonable restraints, ***so the courts will not be burdened with parsing through unreasonable restraints***." *Id*. at 1341 (emphasis added).

Here, BTBC bears the burden of proving the reasonableness of its Employee Non-Solicitation clause, *see* Ala. Code § 8-1-194, and it is unable to meet this burden because the clause is not properly limited under Alabama law. The Employee Non-Solicitation provision broadly states Pack may not, "directly or indirectly . . . solicit, induce, or attempt to solicit or induce ***any Company Employee*** to terminate his or her employment or engagement with the Company or to accept employment or engagement with any person or entity engaging in the Business within the Restricted Territory." (*See* Doc. 1-1 at 16, § 7(c)(v)). The term "Company Employee" includes "***any person*** who is an employee of the Company" during a twelve-month period, depending on when the alleged action occurred. (*Id*. at 15, § 7.1(a)(iii)).

Regardless of when the twelve-month period begins, the plain language of this provision—applying to ***any*** of BTBC's employees holding ***any*** job at ***any*** level ***anywhere*** in entire United States, (*id*. at 15, § 7.1(a)(vi) (defining "Restricted Territory"))—is not

adequately limited to only those holding a "uniquely essential" position to BTBC. *See Cajun Steamer Ventures*, 402 F. Supp.3d at 1340-41 (dismissing claim for alleged violation of an employee nonsolicitation provision that failed to comply with the "uniquely essential" statutory language). As a result, the Employee Non-Solicitation provision is void as a matter of law because it does not fall within any narrow exception of the Alabama statute. *See* Ala. Code § 8-1-190(a). Accordingly, the Court should dismiss BTBC's claim based on the Employee Non-Solicitation provision of the Agreement.

G. **The Court should decline to enforce the Agreement because there is no irreparable harm, including because BTBC selectively enforces its provisions with other former employees.**

Alternatively, even if the Court does not find that the Agreement is void, dismissal is still proper because BTBC cannot show irreparable harm for two main reasons.

First, BTBC has waived its rights to pursue enforcement of the Agreement, and thus cannot show irreparable harm. *See Edwards*, 962 So.2d at 208.[12]

Second, in the restrictive covenant context, a plaintiff cannot show irreparable harm when it inconsistently enforces restrictive covenants against similarly situated individuals. *See, e.g., Surgidev Corp. v. Eye Technology, Inc.*, 648 F. Supp. 661, 698 (D. Minn. 1986).

For example, in *Surgidev Corp.*, plaintiff sought enforcement of restrictive covenants against former employees who joined a competitor. *Id*. at 668. The evidence showed that plaintiff allowed "its employees, including key sales and marketing personnel to leave [it] and to take employment with competitor companies" and plaintiff admitted the instant lawsuit was the only time it "attempted to prevent a[n] employee from leaving the

---

[12] For a more detailed discussion, please see Section III(B), *supra*.

company and taking employment with a competitor." *Id*. at 698. As a result, the court held "it would be inequitable to permit plaintiff to now rely on a non-compete agreement which it has so blithely ignored in the past." *Id*.

Here, BTBC requires its employees to sign the same type of Agreement that was presented to Pack before his employment started with BTBC. Within the last 24 months, there are at least 5 individuals who left BTBC to work for a competitive business. (*See* Pack Decl. at ¶¶ 12-16). Much like the company in *Surgidev Corp.*, to Pack's knowledge, BTBC has not pursued injunctive relief in any manner against these other individuals.(*Id*.). A search of publicly available court records does not reveal any cases, either.

The most egregious example of selective enforcement is Mr. Fondren. (*Id*. at ¶ 16). In March 2025, Mr. Fondren left BTBC and took essentially the same position with Suntory in Mississippi that he held at BTBC in Mississippi. (*Id*.; Azar Decl. at ¶ 3). Not only has BTBC chosen not to pursue action against Mr. Fondren—it expressly released him from any enforcement in writing. (Pack Decl. at Ex. 2). BTBC's Co-Founder went as far as telling Mr. Fondren that it is acceptable for him to solicit BTBC's "callable customer universe in Mississippi." (*Id*.).

This directly contradicts the BTBC's claims in this case. (*See* Doc. 7 at 4 (claiming "every day [Pack] remains employed and working for [Suntory] to solicit, market and promote Suntory's products to the former customers of BTBC . . . harm[] BTBC financially [and] . . . must cease to prevent additional harm that cannot be prevented absent injunctive relief"). If Pack's departure in Alabama is allegedly causing such devastating irreparable harm in Alabama and Mississippi to BTBC, then it is incomprehensible that Mr. Fondren making the exact same employment change in BTBC's own backyard of

***Mississippi*** has no effect. Either a manager leaving BTBC and joining an alleged competitor in his same territory irreparably harms BTBCs' business or it does not. BTBC cannot have it both ways.

This is especially true when the core tenant of injunctive relief is equitable in nature. It is inequitable to hold Pack to a different standard than every other departing manager, including Mr. Fondren, especially nearly a year into Pack's new employment. Put simply, BTBC's selective enforcement, or lack thereof, of its employment agreements against similarly situated individuals as Pack undermines any theory that it has been irreparably harmed by Pack's departure to a competitive business. *See Surgidev Corp.*, 648 F. Supp. at 698.

For the above reasons, substantial reasons grounded in equity and waiver exist to decline enforcement of the Agreement. Accordingly, the Court should dismiss BTBC's Complaint, which only seeks injunctive relief, with prejudice.

## III.    Conclusion

For the foregoing reasons, Pack asks that the Court enter an order dismissing BTBC's complaint with prejudice.

Respectfully submitted,

/s/ *William H. Foster*

William H. Foster (admitted *Pro Hac Vice*)
LITTLER MENDELSON, P.C.
110 East Court Street, Suite 201
Greenville, SC 29601
Telephone:    (864) 775-3191
Facsimile:    (864) 752-1249
Email:        bfoster@littler.com

Matthew G. Gallagher (MS Bar No. 103159)
LITTLER MENDELSON, P.C.
One Commerce Square
40 South Main Street, Suite 2500
Memphis, TN 38103
Telephone:   901.322.1226
Facsimile:   901.531.8478
Email:        mgallagher@littler.com

*/s/ Matthew G. Gallagher (with permission)*
Resident Attorney

*Attorneys for Defendant William Case Pack*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, that the foregoing document has been properly filed with the Clerk of this Court, through which service was made upon the following:

Steven H. Funderburg
P.O. Box 13960
Jackson, MS 39236
sfunderburg@fsplawfirm.com

/s/ *William H. Foster*